# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EARNEST D. BEAMON,**

      Plaintiff,

  -vs-                                      Case No. 15-CV-560

**WILLIAM POLLARD,**
**TONY MELI,**
**CAPT. O'DONAVAN**
**C.O. ROSENTHAL,**

      Defendants.

## SCREENING ORDER

On May 8, 2015, Earnest D. Beamon, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated at Waupun Correctional Institution. The plaintiff petitioned to proceed *in forma pauperis*, and the Court assessed an initial partial filing fee of $15.81. On July 2, 2015, the plaintiff paid the initial filing fee in full. Therefore, his motion for leave to proceed *in forma pauperis* will be granted.

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer. 28 U.S.C. § 1915A(a). The Court may dismiss an action or portion thereof if the claims alleged are "frivolous or malicious," fail to

state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim under the federal notice pleading system, plaintiffs must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Indeed, allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

Federal courts follow the two step analysis set forth in *Twobly* to determine whether a complaint states a claim. *Iqbal*, 556 U.S. at 679.

First, the Court determines whether the plaintiff's legal conclusions are supported by factual allegations. *Id.* Legal conclusions not support by facts "are not entitled to the assumption of truth." *Id.* Second, the Court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id. Pro se* allegations, "however inartfully pleaded," are given a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In the context of a § 1983 claim, the plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under the color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). A suit seeking monetary damages under § 1983 must further allege that the defendants were personally involved in the constitutional deprivation. *Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014).

**COMPLAINT ALLEGATIONS**

The plaintiff was initially incarcerated at Redgranite Correctional Institution ("RGCI"). On October 2, 2013, he was transferred to Waupun Correctional Institution ("WCI") where his possessions were confiscated

and searched as a part of routine prison procedure for new arrivals. On October 4, 2013, all of his possessions were returned without issue.

On November 12, 2013, Correctional Officer Beasley confiscated the plaintiff's property again.[1] The confiscation occurred after RGCI called WCI regarding "5% percenter material" that the plaintiff may have possessed. RGCI staff had located letters that plaintiff had sent to RGCI inmates using gang affiliated words such as "peace," "god," "devil," "alphabet boys," "science" and "mathematics." On November 13, 2013, Beasley returned some of the plaintiff's property without any issue.

The plaintiff then wrote to defendant, Security Director Tony Meli, requesting return of the rest of his property. Defendant Meli asked Captain Radke to speak with the plaintiff, and the plaintiff explained that he sought to "better himself" by reading religious passages and other similar books. Beasley subsequently returned the rest of the plaintiff's property sometime in January 2014, again without any issue.

On July 25, 2014, the plaintiff's property was confiscated for a third time. This time, the plaintiff was also placed in Temporary Lock Up ("TLU"). The plaintiff spoke with defendant Meli to determine why he was

---

[1] The plaintiff does not identify what specific items were confiscated. However, he makes several references to correspondences with other inmates, religious passages, and other reading materials that he no longer possesses.

in TLU, and Meli indicated that he could not comment at that time. On August 12, 2014, the plaintiff filed an inmate complaint regarding the constant confiscation of his property. Two days later, on August 14, 2014, defendant, Correctional Officer Rosenthal, filed a conduct report for possession of contraband and disrespect.

At the conduct reporting hearing, defendant, Captain O'Donavan, found the plaintiff guilty and placed him in disciplinary segregation for 270 days. Defendant, Warden Pollard, later affirmed the decision on September 17, 2014. The plaintiff has not seen his property since July 25, 2014.

The plaintiff asserts several constitutional violations. First, he asserts that confiscation of his property placed an unreasonable burden on his religion and his speech. Second, he asserts that he was placed in disciplinary segregation in retaliation for the inmate complaint he filed on August 12, 2014. Third, he claims that he did not have notice of what constituted "contraband" because his property had been returned to him on two prior occasions without any issues. Finally, the plaintiff also asserts a Religious Land Use and Institutionalized Persons Act

("RLUIPA") claim.[2]

For relief, the plaintiff seeks: (1) a declaration that the acts and omissions described in the complaint violated his constitutional rights, (2) compensatory damages in the amount of $10,000 from each defendant, and (3) punitive damages in the amount of $10,000 jointly and severally. He also seeks recovery of all costs in this suit and any other relief that the Court deems appropriate.

## LEGAL ANALYSIS

### I.     First Amendment: Religion

Prisons must permit inmates the reasonable opportunity to exercise religious freedom. *Maddox v. Love*, 655 F.3d 709, 719 (7th Cir. 2011). Restrictions that infringe on an inmate's exercise of his religion are permissible to the extent they are reasonably related to a legitimate penological objective, such as security or economic concerns. *Id*. At the screening stage, the Court only determines whether a plaintiff alleged that he was denied a reasonable opportunity to exercise his religion without an

---

[2] On July 6, 2015, the plaintiff filed a motion to amend the complaint and withdraw the RLUIPA claim. The plaintiff failed to submit a proposed amended complaint as required by local rules. *See* Civil L. R. 15 (E.D. Wis.). Therefore, the motion to amend will be denied. However, the Court will dismiss the RLUIPA claim per the plaintiff's request.

adequate penological justification. *Id*. at 720. Courts do not make determinations on the merits until the issues are fully briefed. *Id*.

The plaintiff is a Muslim and a member of the Moorish Science Temple of America. He claims that writing and memorizing religious passages is an essential part of his religion. Defendant Meli and his staff allegedly confiscated the plaintiff's religious passages (including a passage he had copied from a book by author Derrick Johnson) and prevented him from practicing this important aspect of his religion. As a result, the plaintiff has stated a plausible First Amendment violation.

## II.     First Amendment: Freedom of Speech

Freedom of speech implies freedom to read. *Toston v. Thurmer*, 689 F.3d 828, 831 (7th Cir. 2012). Forbidding a person to read shuts him out of the marketplace of ideas and opinions that the free-speech clause intended to protect. *King v. Federal Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005). As with freedom of religion, an inmate's freedom to read is limited by the prison's legitimate concerns with security. *Toston,* 689 F.3d at 829.

The plaintiff alleges that defendant Meli and his staff confiscated his reading materials (including a book he wrote himself) and prevented him from participating in thoughtful expression protected by the First

Amendment. Therefore, he has stated a plausible free speech violation.

### III.   First Amendment: Retaliation

The First Amendment right to petition the government for redress of grievances includes the right of access to the courts. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). This includes the right to pursue "administrative remedies that must be exhausted before a prisoner can seek relief in court." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Prisoners are entitled to utilize available grievance procedures without threat of recrimination. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Any act taken in retaliation for utilizing grievance procedures violates the Constitution. *DeWalt*, 224 F.3d at 618.

A plaintiff must allege that he: (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 553. At a minimum, the plaintiff must reference the suit or grievance spawning the retaliation and the acts constituting the retaliatory conduct. *Walker v. Thompson*, 288 F.3d 1005, 1012 (7th Cir. 2002).

The plaintiff alleges that he filed an inmate complaint against WCI staff for seizing his correspondences, religious passages, and reading materials with no reason but to harass. He alleges that two days after he filed his harassment complaint, defendant Rosenthal filed a conduct report alleging that the very property at the core of his harassment claim constituted "contraband." Defendant O'Donavan then allegedly sentenced the plaintiff to 270 days in disciplinary segregation, and defendant Pollard later affirmed that decision. Based on the timing of the events, it is reasonable to infer that the inmate complaint served as a motivating factor in filing the conduct report and later deeming the plaintiff's property "contraband." Therefore, the plaintiff stated a plausible retaliation claim.

**IV. Fourteenth Amendment: Due Process**

A deprivation of liberty without fair notice of the acts that would give rise to such a deprivation violates the due process clause. *Toston*, 689 F.3d at 832. Placement in disciplinary segregation implicates a liberty interest when the duration is "atypical" and causes "significant hardship." *Marion v. Columbia Correction Inst.,* 559 F.3d 693, 695 (7th Cir. 2009). The Seventh Circuit has held that 240 days in disciplinary segregation is

"atypical," can cause "significant hardship," and cannot be dismissed at the screening stage for failure to allege a liberty interest. *Id*. at 698.

The plaintiff alleges that he did not have notice that his correspondences, religious passages, and reading materials would give rise to his placement in disciplinary segregation for 270 days. He states that these very items had been confiscated and reviewed on two prior occasions and had been returned by several different correctional officers without so much as a warning about their content. The plaintiff asserts he could not have known that defendant Rosenthal would write him up for possessing these items, or that defendants O'Donavan and Pollard would ultimately conclude that they were "contraband." As a result, the plaintiff has stated a plausible due process violation.

## ORDER

**IT IS THEREFORE ORDERED THAT** the plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS ALSO ORDERED** that the plaintiff's motion to amend the civil complaint (ECF No. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $334.19 balance of the filing fee by collecting

monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the Waupun Correctional Institution.

**IT IS ALSO ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution,

- 11 -

Case 2:15-cv-00560-WED   Filed 02/08/16   Page 11 of 12   Document 12

Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 8th day of February, 2016.

**BY THE COURT:**

*(signature)*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**